Good morning, Your Honors. My name is Brent Brocker. I represent Appellant and Plaintiff Office Depot, and with the Court's permission, I would like to reserve seven minutes in rebuttal on this argument. All right. Sure. Watch your clock. Thank you, Your Honor. Thank you for hearing this very important case in the insurance coverage arena. The application of California Insurance Code Section 533, both with respect to a carrier's duty to defend and its duty to indemnify its policyholder. Before addressing some of the core arguments, I think it's important to reemphasize that the underlying Sherwin case at issue here involved allegations only. Those allegations were raised in a series of complaints, but in the Sherwin case, there was no trial, there were no findings of fact, there were not even summary judgment motions or evidentiary motions filed such that any evidence in the case was weighed. So we're dealing solely with allegations here in Sherwin, and the case settled without any admission of liability by Office Depot. That settlement was approved by the Court. Thus, the rulings by the District Court in this case, in the Office Depot case, applying Section 533 are particularly significant because if they're upheld, they would permit and arguably encourage insurance companies to invoke Section 533 to deny claims based solely on a review of allegations rather than proven facts or even submitted facts. And this could be the case even though it is black letter law that Section 533 does not apply to the duty to defend. Now, by this appeal, Office Depot contends that the District Court erroneously granted summary judgment in favor of AIG on the duty to defend when partial summary judgment should have been entered in favor of Office Depot under longstanding California duty to defend principles. Earlier in the case, the Court also granted a motion to dismiss Office Depot's claim that And instead, again, we're settled without any admission of liability. With respect to the summary judgment order, the Court made two core erroneous rulings. First, the Court ruled that Section 533 precluded any potential for coverage of Sherwin as a matter of law. And secondly, the Court concluded that if you assume 533 does apply, Office Depot could never have had a reasonable expectation of a defense of the case. If either of these rulings is reversed, Office Depot respectfully submits that partial summary judgment should be entered in its favor on the duty to defend, with the remaining issue to be tried, Office Depot's damages for that duty. Now, with respect to the application of Section 533 to the Sherwin claims, the Court's rulings are premised on the notion that the California False Claims Act has a quote-unquote additional scienter requirement not present in the statute, and that is the intent to induce reliance. But respectfully, the statute does not contain that element. The CFCA specifically precludes the knowing presentation of a false claim, and it defines knowing as including acts in reckless disregard of the truth or falsity of the information. It also specifically states that specific intent to defraud is not required for liability to attach. As we said in the briefing, we pointed to some of the legislative history of the Federal False Claims Act, on which the CFCA is based, in which Congress specifically stated that no showing of willfulness was required for liability to attach, and that's an additional reason why 533 should not apply. In this case, there is no authority that extends the District Court's reasoning to the California False Claims Act, or the False Claims Act, on which it is based. To the contrary, the cases repeatedly hold that the scienter required under the False Claims Act only recklessness. This principle is also illustrated in the Rakem case, which, similar to the CFCA, considered whether Section 533 applied to a 10b-5 violation for the purchase or sale of securities. And Rakem concluded that it did not, because only recklessness was required for such liability to attach. Now... Counsel, even if we agree with you on all of that, I looked at the policy, and it's a media liability policy. What's the argument that there's coverage in the first place? Sure, sure. So it's a convoluted policy with respect to the coverage grant. Within the entire policy, which is an AIG net advantage policy, there is a multimedia module, and the language that we rely on and cite from the policy is at pages five and six of our opening brief. But essentially, the policy covers wrongful acts and damages flowing from those wrongful acts. And the wrongful acts must occur solely in the publication of material, which is then relied upon by the recipient to make a decision or decisions causing the loss. So... This isn't a case where underhanded pricing practices are alleged. Well, it's a case that has really broad allegations. As we said in our brief, there are literally five different theories of potential liability here. And to go back to your original question, though, as a starting point, the question here isn't whether there is coverage under the policy. We're talking here about the duty to defend. So the question is whether there is the potential for coverage under the policy. Okay, so what's the potential coverage? And the potential for coverage under the policy stems from a variety of different allegations in Sherwin. I mean, Sherwin alleged essentially that Office Depot used advertisements, brochures, links to its websites to mislead the purchasers of its products into believing they were purchasing products for essentially the best deal that they could get, okay? So, but the allegation of that misconduct is really complicated. I mean, for example, Sherwin alleges that Office Depot would discontinue a product, not inform the purchaser, and issue catalogs that contained other products for sale that the purchaser then would acquire. There are other allegations in which Sherwin would say, you know, Office Depot switched products that were for sale from a quote-unquote supplier or third-party manufacturer and put in its own products for sale, thereby deceiving the purchaser into purchasing those alternatives. But the key for purposes of coverage here, or at least the potential for coverage, is that Sherwin specifically alleged that Office Depot engaged in this conduct through the use of commercial websites, supplier catalogs, links to catalog releases, and other materials that essentially misled or potentially deceived the purchasers into believing they were getting the best deal possible. So it is the use of those materials and those, I should say, allegations of the use of those materials that gives rise to at least the potential for coverage. And that's because the public entity has no ownership relationship and made its purchase decisions based on the context of your material. That's your argument? That's correct. That's correct. That the material was used in an effort to mislead or deceive the purchasers into believing they were getting a good deal when, in fact, there were other alternatives out there? The district court clearly understood your argument and acknowledged that the CFCA only required recklessness with regard to the conduct or the truth or falsity of the statement, but relying pretty heavily on California law, particularly that California amplifier case found that there was additional scienter requirement that now scienter has been elevated. How do you respond to that analysis? You want us to go back to the statutory language of the CFCA? I do. I think you need to go to the statutory language of the CFCA, the legislative history, and on its face, it permits liability for recklessness where no specific intent to defraud is required. Now, California amplifier is a really important decision for purposes of this case. And it's really important to understand that in California amplifier, the specific issue was whether California Corporation Code Section 2550 was whether there could be recovery for recklessness under that section. So 25, excuse me, 25500 creates a private cause of action for someone who is accusing another of violation of 25400. In the language in 25500, creating that private cause of action is critical, because it says that only someone who willfully, quote unquote willfully, participates in a violation of 25400 can be liable for the private cause of action. And so the Cal Amp court looked at that language and it said, and I quote, the most reasonable interpretation of the phrase willfully participates is to limit section 25500 liability to situations where there is an intent to defraud through a knowingly false statement. So that's the grounds on which Cal Amp held that 533 applied to 25500. Now, obviously, under the CFCA, there's specific language that says the intent to defraud is not required for liability to attach. So I don't think you can look at Cal Amplifier and use it as authority for applying 533 to the California False Claims Act. I'm cognizant of my time here, so. Yes, you were going to reserve. I was going to try to reserve seven, but. Right, but no one ever manages to reserve exactly what they say they're going to do. You can give them four minutes back. Thank you. Thank you. But use it only if you need it. Good morning, your honors. Harvey Geller on behalf of AIG. It's very important to start with what this case is about. In the Sherwin case, Office Depot was sued under the California False Claims Act for systematically defrauding over 1,000 California governmental entities for overcharging them for office supplies. Office Depot's conduct, as alleged in the Sherwin case, is impossible to square with the two media policies at issue in this case. Those policies provide very specialized coverage, not general liability coverage. But there's a more important threshold issue. Office Depot claims that it was entitled to be indemnified in the Sherwin lawsuit. Those claims are foreclosed by Section 533 of the California Insurance Code for three interconnected principles of California law. First, even if the knowledge standard for a claim under the California False Claims Act is satisfied by a showing of recklessness, that claim is still considered a willful act under Section 533. That is because a knowledge standard based on reckless does not inoculate a claim, a fraud-based claim, as those claims also contain the higher C-enter element of intent to induce reliance. The requirement that the court is obligated to look to the highest element, the highest C-enter element, and not the lowest, is in determining the applicability of Section 533, was established in California Amplifier. That is the important point in California Amplifier, is that when a claim has multiple C-enter elements, you look to the highest one in determining the applicability of Section 533, not the lowest. It is that requirement that separates California Amplifier from the claims in RACAM, which is a district court case, not a California state case. In California Amplifier, the false statement was made recklessly, in that case regarding the purchase or sale of a stock. But it still implicated Section 533 because the statement was statutorily required to have been made for the purpose of inducing the purchase or sale of a security. As the court stated in that case, recklessness satisfies one element of the statute, but deliberate intent is required to satisfy another element. Conversely, in RACAM, the false statement was made recklessly, but it did not implicate Section 533 because 10b-5 claims lack intent for any element of the claim, including the extra element of intent to induce reliance. And that brings us to the second principle. All fraud-based claims in California require an intent to induce reliance. Intent to induce reliance can only be based on intentional conduct. And this is true regardless of the C-enter element used to establish knowledge. But why should Cal-Am control in this particular case when that involved different statutory provisions? So that was an attempt to really drill down on what happens when you have two different, I guess it was the California Securities Law, and so that's what the court was talking about. Here we have statutory language, and so shouldn't we then go back to the California False Claims Act to determine the level of C-enter required, and then apply that to California Code Section 533? Why do we need to look at Cal-Am for any sort of guidance when we already have the False Claims Act C-enter requirement pretty clearly established? Well, you're assuming the California False Claims Act only has a single C-enter element, and in fact it has two. You have the C-enter element that's associated with knowledge, and then you have the C-enter element that's inherent in every fraud-based claim, including a fraud-based claim based on a California False Claims Act. Well, true, it's a fraud-based claim, but the Sherwin lawsuit settled, right? Was there any admission as to whether liability was based on reckless conduct versus fraudulent intent to induce? Reckless conduct is the level of knowledge C-enter. Intent to induce reliance is an element inherent in every fraud claim. There are two C-enter elements there. So it doesn't matter that the California False Claims Act recognizes reckless as satisfying the knowledge C-enter element, when you still have the intent to induce reliance. And to the extent there's any question as to whether or not intent to induce reliance is an element of the claim, number one, it's an element of every fraud claim in California. And number two, the U.S. Supreme Court, in discussing the issue in Allison-Engen, which was under the Federal False Claims Act, stated that the intent to pay the False Claim Act, the intent to pay the false claim, is part of the act. So in other words, that is the same intent that Judge Wilson found here exists under the California False Claims Act. So we actually don't need to question whether or not it is an element in the act, the U.S. Supreme Court has said it is. Judge Wilson said the same thing under the California Act. A false claim necessarily requires you to intend to induce their reliance, which is to pay the false claim. That's why you submit a false claim, is to get it paid. That is different than the knowledge standard as to whether or not you knew it was false. So the False Claims Act says it has to be reckless or intentional. That goes to knowledge, not the intent to induce reliance. So I was looking at the pre-filing of this lawsuit, letters between AIG and Office Depot and the council. And this particular defense to coverage never came up in all those letters. I don't know when it came up in this lawsuit, but it wasn't raised by AIG to begin with. Well, AIG doesn't need to raise it separately, first under the Waller case. And secondly, it's public policy in California. It's the law in California. No, I mean, why wasn't it raised if it's such a clear defense to insurance here? I can't speak to that issue. I did not draft that letter. But what I can say is, when you have a statute in California- There's more than one letter here. I'm sorry, what? There's more than one letter. I'm just, you know, usually having represented a few insurance companies myself, you would put in everything. Right, but I think it also reserved rights at the end, and that other issues could be raised. But more importantly, Section 533 is a bar set by the California legislature. So it wouldn't matter what you say in a letter. The California legislature has spoken to this issue and said as a matter of California public policy, you can't indemnify this claim. I guess I just don't see how, when the case settled, we don't know whether Office Depot, if it had gone to a jury, its employees would have been found to have been recklessly discharging the public or with deliberate ignorance. Maybe that's more willful. But recklessly sending, I mean, you know, didn't care which price sheet it was putting up for the public entities or switching out products. This wasn't done willfully. We don't know if that would have been found, just like the insurance company at the outset when the complaints filed doesn't know whether there's a potential for coverage on that basis. Right. But the potential for coverage doesn't require a finding of liability. That's not a requirement under California law. Otherwise, then... No, I know that. I'm saying when you get the complaint and you're deciding, when the insurance company gets the complaint and the notice of the claim and it's deciding whether or not there's a potential for coverage, it has to look at the complaint and look at the statute to see whether there's a potential for liability and determine whether it falls within its coverage or falls inside an exclusion. And so at that point, there is a potential that Office Depot could have been found to have acted recklessly and not willfully, and therefore it would not have been excluded  Well, you're focusing again on the knowledge standard. The knowledge standard is irrelevant here. What's relevant is the intentional standard in every fraud claim, which is intent to induce reliance. So you have to separate those two, as Judge Wilson did and as the court did in California Amplifier. You can't view this case through the lens of, well, what if they were found to have acted recklessly? That goes to knowledge. It's the you either intend or it's the ostrich-like approach. Well, but as a practical matter, what if we were to find that there was a duty to defend here, that we don't look at all these other external sources, that we can just look at the statute at issue and the complaint, and you now have a settlement of X amount and then an attorney's fees amount of X amount. And I'm just, I mean, we would suppose you found there was a duty to defend, but not necessarily a duty to indemnify. How would you allocate? What would be the amount of money for that defense? How would that be even litigated at this point? I'm not sure. And if I could speak to the duty to defend issue, because I think California law is also very clear on that, which is, if there's no duty to indemnify, then the duty to defend falls away as well. That's not true. Because we all know under California law, the duty to defend is much broader than the duty to indemnify. Except when there's no duty to indemnify, this is in the B&E case, when there's no defense, then although Section 533 does not on its face extend to the duty to defend, it has to inform the analysis. Because if there's no potential for coverage, then there's no duty to defend. But what B&E said is, well, but there still may have been an objectively reasonable expectation of defense. And in that particular case, what B&E Convalescent Center said is that there's two paths, and there's other cases that fit into this construct, but there's two paths to a defense in that situation. Number one, the parties can contract around Section 533 for purpose of the defense. So if the policies here explicitly extended to false claims, then there would be a duty to defend. Or two, if the policy stated that they would indemnify claim – that they would defend claims that were otherwise not indemnifiable. We don't have either one of those situations here. So under B&E Convalescent Center, once there's no duty to defend, then you go to that analysis, and then there's no – excuse me, once there's no duty to indemnify, then you go under B&E to the duty to defend, and they don't satisfy either one of those tests. All they said in the district court was, well, there was an allegation of reckless conduct. But that doesn't get you down the two paths of what does the policy say in that respect. Now – and I would commend the court, because B&E Convalescent has been – it's not controversial law in California, and it's also in Downey and it's in Mez. It's – that is their path. But even under the duty to defend, under Gray, because even Gray recognized that the But there could not have been a duty to defend here. There could not have been any claim below intentional conduct. And the reason for that is quite simple. The relator in the Sherwin case could not have – did not have standing to allege a claim other than the California False Claims Act claim. He had no standing. So he couldn't allege a negligence claim. Also, the government entities who intervened in the Sherwin case could not have alleged a claim with a lesser standard than the California False Claims Act, because that would be doing an end run around what the California legislature set as the standard in the False Claims Act. So this concept – and this is the issue that Office Depot raised at the district court – well, there could have been a negligence claim. There could not have been. So as a matter of law, there couldn't have been. So we shouldn't speculate, and we certainly shouldn't speculate about things that could never have happened. So there could never have been a duty to defend here. Now, we also have to understand there's two major, major public policy issues at issue in this case. Number one, the False Claims Act exists to prevent people who defraud the government, to protect the treasury. And then we have the public policy that's inherent in Section 533, which is that willful acts are not going to be indemnified. Now, Office Depot has taken a very narrow view of what is a willful act in this case. And they did two things, and I'll speak kind of quick because I'm out of time here. They said it's either a preconceived design to injure, which you'll find in the Clemmer case. In the Clemmer case, everyone, every court in California now has recognized has been limited to its facts. But then they also say, well, then it could also be an act that's inherently harmful, and that's the J.C. Penney case. Now, there also are other grounds. Those are not the only test for finding willfulness. Okay, so you are over your time. Let me ask you one quick question. So, is your position that because the complaint itself only alleged intentional, knowing, or willful acts, that there was no potential for coverage? That's all that complaint could have alleged. It could not have alleged other claims. A relator has no standing to allege anything other than the California False Claims Act claims. And the government can't show up and allege something with a lesser standard. Why is that? Why can the relator not allege anything greater than, I mean, lesser than? He has to have standing to bring a claim. And he has standing under the False Claims Act. But he was not a purchaser of the goods in question, so he would have no standing to allege claims against Office Depot. He has to proceed under that act. He doesn't get to proceed apart from that act. That's his standing. Can I ask one additional question? What is your best state case for the proposition that the intent-induced raises the scienter level to the willfully part of Section 533? Is it Cal-Am? Well, Cal-Am is the one that discussed that you go with the higher scienter element. The the when you look at the Dykstra case and the Chatting case, and also Mez, it's an act, the willful standard under Section 533 also includes an act that is intentionally performed with knowledge that damage is highly probable or substantially certain to result. And a misrepresentation claim, the damages and the conduct is considered purposeful under California law. That's the Aetna case. It's Mez. It's Ortega-Rock, which discusses this additional element. So you have to, it's interconnected principles. Cal-Am says you look at the highest scienter element. The in a fraud-based claim, the higher scienter element is intent, and intent under California law is purposeful conduct. All right. Thank you, counsel. Thank you. Thank you. I'll attempt to be brief. Just a few points in response to what counsel argued. First of all, with respect to the policies at issue here, I think it's fair to consider these closer to DNO policies than a media policy, because these policies cover wrongful acts in connection with the use of materials. So I just wanted to point that out. Counsel mentioned Allison Engine, which I didn't see cited in any of the briefs for the proposition that there needs to be an intent to deceive under the False Claims Act. I haven't looked at that opinion, so I don't know if that's correct or not. But I will note that we cite Hooper, which is a 2012 Ninth Circuit case, which specifically held that there is no requirement of the intent to deceive for there to be liability under the False Claims Act. Getting to the point about what is actually alleged in the Sherwin case, Judge Wardlaw, you make a good point that if you look at the allegations of Sherwin, there are actually recklessness and even negligence allegations in there. So in particular, as we said in our briefs, when the interveners filed their fraud claim, they actually made statements in there to the effect that Office Depot's conduct was at least reckless. There are also factual allegations in the Sherwin complaint, the Relator complaint, in which the Relator accuses Office Depot of not having systems and controls that were sufficient to track all of the different product changes and pricing changes and so forth. And so that on its face is less than intentional conduct, I would submit. Counsel continues to refer to the California False Claims Act as, in this case, as a fraud case, but it is not a fraud case. The California False Claims Act defines knowing as including acts made in reckless disregard of the truth or falsity of the information. So that, by definition, is not, does not bring anything. But specifically says proof of specific intent to defraud is not required. Correct. But counsel's argument is that yes, that goes only to knowledge. There's a different element of intent to induce that he reads in the case law, so he's separating knowledge from the intent to induce element, which then, using Cal-Am, seems to suggest an elevated scienter requirement. I don't know how that squares with proof of specific intent to defraud is not required language, but that's the argument. Yeah, yeah. And it gets back to my prior point that that intent to induce reliance is not an element of the CFCA. It's nowhere in the statute. And that Cal-Am specifically relied on the willfulness language in 25-500 in rendering its opinion that the intent to deceive was a necessary element of 25-500. I can't recall, but did anybody put into the record what the jury instructions on the California Faults Claim Act would be? Whether the jury instructions, I'm assuming there might be standard jury instructions on this, whether it focuses more on proof of specific intent to defraud is not required in the statutory language, or whether the standard jury instructions would have intent to induce reliance, which seemed to then elevate the scienter requirement. Yeah, I don't, to answer your question, I don't believe either party did. But I also believe that the statute is pretty clear on its face in terms of what is and isn't required. I also think that the language in the statute focusing on the word acts, in other words, knowing means acts in reckless disregard of the truth or falsity of the information, weighs against this implied term of the intent to induce reliance. I mean, it's not looking at the specific intent of the person submitting the claim. It's looking at their conduct or their acts. And lastly, counsel raised the, well, two points. One, with respect to vicarious liability, we haven't really touched on that, but clearly, as we said in our brief, so I won't belabor it, that the Sherwin complaint sought to impose liability against Office Depot on vicarious liability theories. Those could never be barred by Section 533 as a matter of black letter law. And then lastly, with respect to the B&E case, I think counsel is trying to tease something out of that case that doesn't exist. When you look at the B&E case, the reason, very clear reason, the court ruled that the insured would not have a reasonable expectation of coverage was because the policy itself made a defense optional. It specifically said we may provide a duty to defend in the case of a certain class of claims. And the court looked at that language and said, how could an insured reasonably expect a defense where a defense is optional? And that's clear on the face of the opinion. All right. Thank you, counsel. Office Depot versus AIG Specialty Insurance Company will be submitted.
judges: Wardlaw, Nguyen, Owens